## Keen *vs.* Sprague.

Where a minor, at a great distance from his father, entered into a contract of labor for another, which he performed; and the party afterwards refused payment, insisting that he acted only as the agent of a third person, with whom the minor was induced, by his own destitute situation, to settle, taking his negotiable note payable at a distant day for the balance due;—it was holden that the father was not concluded by these proceedings, but might instantly maintain an action for the wages of the son, against the party with whom he originally contracted.

A new trial will not be granted for the purpose of discrediting a witness by shewing contradictory testimony from his own deposition given at an early stage of the same cause; the deposition being on the files of the Court, but accidentally omitted to be read.

*Assumpsit* for wages earned by the plaintiff's son, a minor in the service of the defendant, at a place in the British province of New Brunswick, called *Miramichi*. At the trial at the last term before *Weston J.* the plaintiff's son being admitted a witness, though objected to by the defendant, testified that in *May* 1820, he went from his father's house in this county, *without* his consent, to *Miramichi*, in company with the defendant;—that he was then little more than nineteen years of age;—that after seeking employment elsewhere, he agreed to work for the defendant at twenty dollars per month;—that he was set to work with a company of men who were said to be in the employment of the defendant and of *Eli Sprague* and *Ambrose Snow*, and usually denominated *Eli's* gang, to distinguish them from another company of men who were called the defendant *Nathaniel's* gang;—that the defendant in two or three instances gave him directions about the work, and once attempted to reduce his wages; but refusing to work for a less sum, the defendant told him to continue his labor as before;—that during the time he was thus employed, which was about a year, he received at a store, which appeared to be under the direction of said *Eli* and *Ambrose*, divers goods;—that on applying to the defendant for the balance of his wages the defendant denied that he owed him or had employed him, and referred him to said *Eli* and *Ambrose*;—that he at first refused to apply to them, insisting on payment from the defendant; but afterwards, having no money to bear his expenses home, he did go to *Snow*, who made no ob-

jection to paying him, and did pay him twenty dollars in money, and gave his negotiable note for the balance, deducting the amount of the goods charged to him on the books of the store;—which note his father, on his return, refused to receive in payment for his wages, and which still remained in his or his father's hands; —and that this settlement was made only in consequence of his necessities, the defendant refusing to pay him, and he having no other means to raise money to return to his friends.

The plaintiff proved by other witnesses that his son was hired by the defendant, at the price stated, as the defendant told them; —that they also were hired by him, and labored, in the same manner;—and that *Snow* was reputed insolvent.

The defendant proved by two witnesses that he, and *Eli Sprague*, and *Snow* his partner, transacted business at *Miramichi,* their workmen sometimes being together, and the plaintiff's son being generally employed in what was called *Eli's* gang;—that the son had said that he had labored a year for *Eli* and *Snow*, for whom he also said the defendant had hired him to work; and that he had taken *Snow's* note, which he preferred to *Eli's*, and with which he was perfectly satisfied.

It also appeared that *Eli Sprague*, *Ambrose Snow*, and the defendant all lived in the same house; where all the workmen also boarded when not at work in the woods. And it did not appear whether the lumber which the two gangs got out and prepared for market, was kept separate or together. *Snow's* note was made payable in a year, and was not yet due.

Hereupon the Judge instructed the jury, that if they were satisfied from the evidence, that the defendant hired the son of the plaintiff, without communicating to him his connection with *Eli Sprague* and *Ambrose Snow*, if he was in fact their agent, the defendant was responsible for his wages, notwithstanding he might think proper to direct him to labor with men employed by said *Eli* and *Ambrose*;—that it was the duty of the son to labor according to the direction of his employer;—and that the connection between the latter and the other persons did not impair the plaintiff's claim upon him, provided the defendant hired his son, and did not inform him, until after the labor was performed, that he had any other person to look to but himself;—that if this were

the fact, it was a violation of his contract to refuse payment, and turn the son over to *Snow*;—and that his subsequent settlement with *Snow*, and the note taken by him for the balance, did not exonerate the defendant, founded, as it was, in necessity on the one part, and imposition upon a minor on the other.—Under this direction the jury returned a verdict for the plaintiff; which was to be set aside if the son ought not to have been admitted a witness, or if the Judge's directions to the jury were erroneous; or if the verdict was against evidence, or greatly against the weight of evidence; a motion being filed by the defendant for these two latter causes, at common law.

At this term the defendant was permitted to file a further motion for a new trial, grounded on the fact that the plaintiff's son had formerly given a deposition in the cause; which was on file, and should have been read to the jury here; in which he testified that his father *did* consent to his going to *Miramichi* ;—and that the defendant being absent at the trial, and his counsel also being absent by reason of indisposition, the gentleman who conducted the cause on his part, on that emergency, had no knowledge of the existence of the deposition.

*Orr*, for the plaintiff, opposed this motion on the ground that the evidence was not necessarily contradictory ; and that the deposition was on the files, and within the knowledge of the defendant ;—and might have been used on the trial, with proper vigilance. The whole case, he said, addressed itself not to the Court, but to the jury, by whom it had been correctly settled.

*Allen*, for the defendant, contended that his client was merely the agent of *Sprague* and *Snow* ; and that his principals being sufficiently disclosed by the facts in the case, which the son, who was the plaintiff's agent, could not have misunderstood, the defendant was not personally liable. He also objected that a negotiable note having been given in payment, the verbal contract was thereby extinguished ; and that the father, having adopted the agency of the son in entering into the contract, was bound by all his acts relating to it, and consequently by the settlement. Lastly he insisted that if the plaintiff would avoid the settlement,

he must first give up the note which had been received under it, especially as it was negotiable, and not yet dishonored.  *Tobey v. Barber* 7 *Johns.* 71.    *Badger v. Phinney* 15 *Mass.* 359.    *Reeve's Dom. Rel.* 244.

MELLEN, C. J. delivered the opinion of the Court.

The case on the report presents three questions.

1. Was the plaintiff's son properly admitted as a witness ?

2. Were the instructions of the Judge to the jury correct ?

3. Is the verdict against evidence or the weight of evidence ?

As to the *first* question, we see no reason to doubt the correctness of the decision, and this point has not been urged in the argument.    The father never consented that his son, the witness, should labor for the defendant on his own account, and for his own benefit ;—and as this action is prosecuted by the father, who claims his son's wages, it is clear that if the witness, *had any* *interest* or *bias* on his mind, it must have been *against* that interest or bias that he testified.    Of course this objection fails.

As to the *second* question—it appears that the fact was properly left to the jury, whether the defendant hired the plaintiff's son *without communicating to him his connection with others*, if there was any such connection ; and the jury have found *that he did*.    They have thus found that the labor was done on the credit of the defendant, and in reliance on his promise to pay for it ;—they have found that if the defendant was in fact the *agent* of others in making the contract, he did not *act as such*, or make his agency known until after the labor was performed.    In such cases the promise binds the man who makes the contract.  *Sumner Adm'r. v. Williams* 8 *Mass.* 198.    *Mauri v. Heffernan* 13 *Johns* 58.    *Rathbon v. Budlong* 15 *Johns.* 1.

With respect to the *note* given by *Snow*, it seems it was made payable to the plaintiff's *minor son*, for the balance due for his labor ; according to the settlement made between them.    This adjustment was made and the note received by the *son* without any authority from the *father* ; and on the son's return, the *father* *absolutely refused to receive it* ; and it seems *Snow* is considered as insolvent.    Under these circumstances it is clear the note never

Keen *v.* Sprague.

was sanctioned by the father ; and as he never *received* it, he is not to suffer because it has not been *returned* to *Snow* ; and if the *son* has *retained* it improperly, the father is no more answerable for *that neglect,* than he was for his conduct in undertaking to discharge the original demand by *taking* the note of a man unable to pay it.

In addition to this, all the evidence which was offered to shew that the defendant took an undue advantage of the situation of the son—a stranger in a strange land—at a great distance from his home and his friends, has been considered by the jury, who had a right to consider it, and, if they thought proper, to pronounce the defendant's proceedings an imposition. Their verdict is satisfactory proof that in their opinion the note was given for the purpose of imposition, and that the plaintiff's son was induced to receive it under the influence of that imposition. It is a satisfaction to us to find the *law* and *equity* of the case so perfectly agreed. The motion to set aside the verdict on account of the decision and instructions of the Judge cannot be sustained.

As to the motion for a new trial, at common law, on account of the verdict being *against evidence,* or *greatly* against the *weight of evidence,* as alleged ; we need only say that the facts reported, do not, in our opinion, present any foundation on which such a motion can be supported—and the Judge who tried the cause has not certified to us any dissatisfaction with the verdict.

Neither do we feel disposed to disturb the verdict for the reasons alleged in the motion filed at the present term. The deposition of the witness varies only in one particular from his testimony on the stand ; in all others it is entirely consistent ; and is moreover supported by other witnesses who testified in the cause, and the whole was left to the jury. Besides, the counsel for the defendant knew of the existence and contents of the deposition, which was also on the files of the Court ; and in communicating the facts of the cause to the gentleman who argued it for him to the jury, it was incumbent on him to have stated this also.

*Judgment on the verdict.*